James M. Lamond and Anna E. Lamond v. Commissioner.
Lamond v. Commissioner
Docket No. 6026.
United States Tax Court
1946 Tax Ct. Memo LEXIS 272; 5 T.C.M. (CCH) 51; T.C.M. (RIA) 46023; January 31, 1946
*272 Jerome B. Lieber, Esq., for the petitioners. Homer F. Benson, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: This proceeding involves a deficiency in petitioners' income tax for 1941 in the amount of $4,277.33. The only question in issue is whether an option given to petitioner to purchase at par value up to 25 percent of the stock of the corporation of which he was an officer was given to him as compensation for services to be performed, so that the difference between the fair market value of the shares purchased by the petitioner under the option agreement in 1941 and the price which petitioner paid in acquiring them is taxable to him as compensation received in that year. The term petitioner as hereinafter used will refer to James M. Lamond. The other petitioner, Anna E. Lamond, is his wife. She filed a joint return with him for the taxable year involved and for that reason only is a petitioner in this proceeding. Findings of Fact Petitioner is a resident of Glenshaw, Pa. He filed his income tax return for 1941 with the collector of internal revenue for the twenty-third district of Pennsylvania, at Pittsburgh. Prior *273 to 1918 petitioner was employed as manager and treasurer of McDowell, Small and McKibben Co., Philadelphia, Pa. That company was engaged in manufacturing pipe and pipe fittings and couplings. While in the employ of McDowell, Small and McKibben Co., petitioner conceived the idea of manufacturing seamless steel couplings for pipes. It was the practice of the industry at that time to manufacture couplings from wrought iron by lap welding. Petitioner thought, and later demonstrated, that a seamless steel coupling could be manufactured that would have many advantages over the wrought iron coupling. Enamel Metals Co. was one of the principal customers of McDowell, Small and McKibben Co. Its vice president and general manager, Peter McIlroy, learned about petitioner's plan to manufacture steel couplings and decided to have petitioner join with him in organizing a new corporation for that purpose. After some consultation between petitioner and McIlroy the Pittsburgh Pipe and Coupling Co. was organized in 1918. It had a capitalization of $10,000 consisting of 100 shares of a par value of $100 each. As an inducement to petitioner to go with the new company McIlroy promised him that he *274 would be permitted to purchase up to 25 percent of the capital stock of the company at par value. Petitioner insisted on this arrangement so that he would have an interest in the business and a measure of control over his process of manufacturing the steel couplings. McIlroy intended at all times to own a controlling interest. Upon organization of the company petitioner purchased 10 shares of its stock at $100 per share. Shortly thereafter he purchased 7 more shares at par. Some time in 1920 two of the minority stockholders sold their shares to John S. Patterson. The stock of the corporation was then held, 50 shares by McIlroy, 30 shares by Patterson, and 20 shares by petitioner. In coming into the corporation Patterson ratified the agreement made by McIlroy with the petitioner giving the latter the right to purchase up to 25 percent of the capital stock at par. In 1936 the company's capitalization was increased to $50,000 and prior to 1941 to $200,000. With each increase in the stock petitioner exercised his option to purchase additional shares. In 1941 he purchased 50 shares at $100 per share. The fair market value of the shares at that time was $200 per share. Ten shares had *275 been purchased by petitioner's brother, John Lamond, in 1939 for $200 per share. Up to that time all purchases of the stock had been made at $100 per share. There was a further oral agreement among the stockholders that no stockholder could sell his shares without first offering them to the other stockholders. Upon the death of Patterson in 1944 his stock was offered to the other stockholders at $202 per share which was its then fair market value. Petitioner purchased some of Patterson's shares at $202 per share. He already owned 25 percent of the company's shares and therefore had exhausted his right under the option agreement to purchase the shares at par. Petitioner served as vice president, treasurer and general manager of the company from its inception. His salary was increased from time to time as the business grew. The fact that petitioner had the right to purchase or did purchase shares of the company for less than their market value was never a consideration in the determination of the amount of his salary. The company never claimed any expense deduction on account of the excess value of the shares sold to petitioner over their par value. The right of petitioner under *276 the option agreement to purchase up to 25 percent of the company's capital stock at par value was not given to him as additional compensation. Opinion Whether the difference between the fair market value of the shares which petitioner purchased in 1941 and their cost (par value) constitutes taxable income to him, as the respondent has determined, depends upon whether his right to purchase the shares at a bargain price was given to him as compensation for his services. If it was the intention of the parties that that advantage was given to him as additional compensation then the respondent's determination is correct. See ; ; ; . However, if petitioner's right to the bargain purchase of the shares was not acquired by him as additional compensation then the purchase of the shares did not result in realization of taxable income. ; . The evidence is convincing in this case *277 that the right to purchase the shares in question at par value was not given to petitioner as compensation for services to be rendered. Of course, it was not for services already rendered since the agreement was made at the time of the company's organization. At the time petitioner first acquired shares under the agreement and at the time the agreement was made their fair market value was not in excess of par value, which petitioner paid. The fact that the company prospered and that the shares later more than doubled in value in no way affected petitioner's rights to purchase them at the option price. We think that the respondent was in error in determining that the excess value of the shares which petitioner purchased in 1941 over their cost to him was compensation to be included in his gross income. Decision will be entered under Rule 50.